# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas Glenn Morgan,<br><br>    Petitioner,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>    Respondents. | No. CV 15-01142- PHX-ROS (DMF)<br><br>**REPORT AND RECOMMENDATION** |

**TO THE HONORABLE ROSLYN O. SILVER, SENIOR UNITED STATES DISTRICT JUDGE:**

Thomas Glenn Morgan ("Petitioner" or "Morgan") filed a second amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Petition") challenging his convictions in the Maricopa County Superior Court. (Doc. 11) For the reasons set forth below, the Court recommends that Morgan's Petition be denied and dismissed with prejudice.

**I. BACKGROUND**

    **A. Petitioner's trial**

Petitioner was indicted on May 15, 2008 in Maricopa County Superior Court for possession of a dangerous drug, a Class 4 felony, in case number CR2008-129836-001 ("2008 case"). (Doc. 21-1 at 2) He entered a plea agreement and was sentenced to probation for three years.[1] (*Id.* at 90-95) While on probation for the 2008 offense, on

---

[1] Because the plea agreement and transcript for the change of plea hearing were ordered sealed by the Maricopa County Superior Court, the "Uniform Conditions of

1  December 10, 2010, Petitioner again was indicted in Maricopa County Superior Court on a separate charge of theft, a Class 6 felony. (*Id.* at 109-110) The case assigned to his indictment was CR2010-161928-001 ("2010 case"). (*Id.*) The State subsequently filed a petition to revoke probation in the 2008 case. (*Id.* at 107) Petitioner denied a probation violation (*Id.* at 9) and pled not guilty to the charge of theft (*Id.* at 11).

Petitioner failed to appear at his initial pretrial conference on February 16, 2011 but showed up the next day for the rescheduled conference (*Id.* at 14-20). A settlement conference was vacated on March 18, 2011 because Petitioner was hospitalized. (*Id.* at 21) A criminal competency hearing was continued on July 7, 2011, after Petitioner failed to appear and had also failed to appear at appointments with physicians. (*Id.* at 22-23) Petitioner was present at a criminal competency hearing continuance held on July 14, 2011, at which the court admonished him to keep appointments with the assigned physicians and to appear at the continued competency hearing. (*Id.* at 24-25) On October 4, 2011, the trial court granted an unopposed defense motion for continuance of the final trial management conference, which was based on the defense's assertion it was attempting to settle the case. (*Id.* at 26-27) Again, on November 16, 2011, the trial court granted another unopposed defense motion to continue the final trial management conference due to a trial conflict for defense counsel, and an evidentiary hearing that still needed to be scheduled. (*Id.* at 28-29) The defense moved for trial continuances on January 5, January 31, and February 29, prompted by defense counsel's trial conflicts. (*Id.* at 32, 35, 39-40)

On April 11, 2012, the State moved for a trial continuance due to unavailability of a State's witness. (*Id.* at 41-42) Defense counsel objected, but the court found that Petitioner would suffer no unfair prejudice. (*Id.* at 42) The trial date was reset for May 21, 2012, a delay of 40 days. (*Id.*)

On May 17, 2012, Petitioner made an oral motion for new counsel and a trial continuance, which the court denied, but also advised Petitioner he could put his motions

---

Supervised Probation" form filed in Morgan's case is relied on instead.

in writing for consideration by the Master Calendar Assignment Judge. (*Id.* at 46) At a hearing to set trial on May 21, 2012, Petitioner did not appear and the court ordered trial to begin in absentia, over defense counsel's objection. (*Id.* at 44) A hearing to set a trial date was held on May 30, 2012 and trial was set for June 12, 2012. (*Id.* at 53-54) The court cautioned Petitioner that if he did not appear for trial, a bench warrant would be issued for his arrest, and the trial would go forward without him. (*Id.*)

On June 12, 2012, Petitioner's trial commenced. (*Id.* at 55, Doc. 21-4 at 2) Before the court reporter was set up, Petitioner made an oral motion to represent himself and for trial continuance. (Doc. 21-1 at 56, Doc. 21-4 at 4) The court denied the motion. (*Id.*) The minute entry indicates:
> Argument is heard on [Petitioner's] oral Motion to Represent Self and Motion to Continue Trial Date. [Petitioner] was instructed on 5/17/12 by Judge Flores to put such motions in writing, which [Petitioner] failed to do.
>
> IT IS ORDERED denying [Petitioner's] Motion to Represent Self and Motion to Continue Trial Date.

(Doc. 21-1 at 56) At that point, the minute entry states: "Defendant informs the Court of his dissatisfaction and intention to leave. The Court warns Defendant that the proceeding will go forward in his absence should he choose to leave and that his absence will be determined to be voluntary." (*Id.*) The minute entry further states that Petitioner did, in fact, leave. (*Id.*) Thereafter, Petitioner's counsel advised the court on the record that Petitioner had called and indicated he wanted to take a plea. (Doc. 21-4 at 3) Counsel relayed to him that the State was unable to offer the plea at that point. (*Id.*) Counsel advised the court that Petitioner then said he was going to the hospital. (*Id.*)

The trial transcript dated June 12, 2012 reflects that the court documented the denial of Petitioner's motion:
> Before we had [the] court reporter set up today, Mr. Morgan was present. He was advised of the range of penalties that he [f]aces if he goes forward to trial and if found guilty on the offense as charged. He was also advised that he would be found in automatic violation of his probation case and that that sentence would run consecutive. He also made a motion, an oral

motion to the Court to represent himself, which the Court denied. (*Id.* at 5)

The next trial day, June 13, 2012, Petitioner's counsel advised the court that Petitioner was in the hospital for treatment of his ongoing congestive heart failure problems, and that Petitioner would like to be present at trial and was requesting a continuance. (*Id.* at 4) The trial court requested Petitioner's counsel to speak with Petitioner's treating physician for additional detail about when Petitioner was expected to be released from the hospital. (Doc. 21-4 at 101-102) The court consulted with jury members about their availability, and in an effort to prevent the jury from learning that the trial delay was attributable to Petitioner, advised the jury that a delay was necessary because a witness was unavailable. (*Id.* at 102-110)

On June 18, 2012, the Petitioner appeared with his counsel. (*Id.* at 116-121) Defendant complained that he was not well enough to endure trial, and that he was scheduled to undergo a valve replacement and implant of a defibrillator on June 22, 2012. (*Id.* at 119-120) The court concluded that Petitioner had been released by his physician, and was well enough to testify at his trial later that day. (*Id.* at 120-121) After Petitioner absented himself, the court found Petitioner's absence from trial voluntary. (*Id.* at 127)

Subsequently, the court advised legal counsel that the court had just received a fax purporting to be from Petitioner's physician, which requested the court to continue Petitioner's case until after his surgery on June 22. (*Id.* at 164) In order to verify the fax, the court called Petitioner's physician identified in the fax, and on the record again determined that Petitioner was "voluntarily absent from court without more documentation saying that he's physically unable to be at court today." (*Id.* at 166) The physician stated, "That is absolutely fine by me. The only thing I will say is that my secretaries caught him trying to give them a falsified note from us that they asked our office to fax to the courthouse." (*Id.*)

Petitioner's trial concluded on June 19, 2012, in his absence. (Doc. 21-5 at 48) The jury found Petitioner guilty. (*Id.* at 52) The court ruled that because Petitioner was

already on bond when he voluntarily absented himself from trial, it would issue a warrant for Petitioner's arrest to be held without bond. (*Id.* at 57-58). The court set a sentencing hearing for July 20, 2012 (*Id.*), and a bond forfeiture hearing on July 24, 2012 (Doc. 21-1 at 72). In an order dated July 24, 2012, the court amended its June 19, 2012 minute entry to reflect that Petitioner was in automatic violation of his conditions of probation in the 2008 case. (*Id.* at 76)

When bond agents attempted to bring Petitioner into custody on July 6, 2012, he escaped in his vehicle, reportedly almost running over two bond agents. (Doc. 21-1 at 116) On July 24, 2012, bond agents re-attempted to bring Petitioner into custody. (*Id.*) Petitioner again escaped, this time ramming the bond agent's car. (*Id.*) The next day, patrol officers located Petitioner and brought him into custody without incident. (*Id.*) Subsequently, the State filed a petition to revoke probation in the 2008 case, based on violations of the terms of his probation, including charges of aggravated assault associated with his evasion of the bond agents. (21-1 at 121)

Sentencing in Petitioner's 2010 case was continued on December 5, 2012 on motion of defense counsel because Petitioner had other charges pending (*Id.* at 84), and again on motion of defense counsel on January 22, 2013 (*Id.* at 86).

The sentencing hearing in Petitioner's 2010 case was ultimately conducted on March 27, 2013. (Doc. 21-5 at 61-81) On the 2010 theft case, Petitioner was sentenced to the presumptive term of 3.75 years' imprisonment with 278 days of presentence incarceration credit, and was ordered to pay restitution for the amount of the theft. (Doc. 21-5 at 74, 21-1 at 124) On the 2008 case, Petitioner's probation was revoked and he was sentenced to the presumptive term of 2.5 years' imprisonment, to run consecutively with his sentence in the 2010 case. (*Id.* at 74, Doc. 21-1 at 129)

**B. Petitioner's direct appeal**

Petitioner timely filed a notice of appeal (Doc. 21-2 at 17-18), and in his appellate brief argued the following issues: (1) whether the trial court abused its discretion when it failed to conduct a *Faretta* hearing when Petitioner moved to represent himself; (2)

1  whether the trial court erred by not awarding Petitioner all of the presentence
2  incarceration credit due him; and (3) whether the trial court erred by ordering Petitioner
3  to pay for DNA testing pursuant to A.R.S. § 13-610. (*Id.* at 21, 50-68)

4  The State filed its answer, contesting Petitioner's first two claims and conceding
5  the correctness of his third claim, involving the requirement that he pay for DNA testing.
6  (*Id.* at 95, 99-106) Regarding Petitioner's second claim, involving presentence
7  incarceration time, the State argued that "[w]hile the trial court may have erred in failing
8  to give [Petitioner] credit for the 132 days in the [2008 case], this Court does not have
9  jurisdiction over the [2008] case because it is not part of this appeal." (*Id.* at 106)

10  Petitioner's appellate counsel elected to not file a reply brief, stating that the issues
11  had been fully presented. (*Id.* at 114) Petitioner requested leave of the Arizona Court of
12  Appeals to file a "Supplemental Reply Brief' to augment the record with his "best
13  recollection of crucial events and evidence presented and/or offered during pre-trial
14  hearing wherein the trial court did not make a record and/or a complete record." (*Id.* at
15  120) The court of appeals denied Petitioner's motion on the ground that, because he was
16  represented by counsel, he was not entitled to hybrid representation. (*Id.* at 154)

17  In its reasoned decision, the court of appeals held that the trial court did not abuse
18  its discretion in denying Petitioner's motion to represent himself, because the motion was
19  untimely and it was apparent that the basis underlying the motion was trial delay. (*Id.* at
20  162 ¶ 18) The court concluded that it had jurisdiction over Petitioner's 2008 case, and
21  ordered the trial court's sentencing order modified to credit Petitioner 132 days of
22  presentence incarceration credit. (*Id.* at 163 ¶ 22) Additionally, the court of appeals held
23  that, based on *State v. Reyes*, 232 Ariz. 468, 307 P.3d 35 (App. 2013), the trial court had
24  erred in requiring Petitioner to pay his DNA testing. (*Id.*)

25  **C. Post-Conviction Relief action**

26  Petitioner was appointed counsel for his Post-Conviction Relief (PCR) action.
27  (Doc. 21-3 at 18) Appointed counsel filed a notice in Maricopa County Superior Court of
28  her completion of PCR and finding of no colorable issue, and requesting an extension of

time to allow Petitioner to file a *pro per* petition for PCR. (*Id.* at 38-39) The court ordered counsel to remain as advisory counsel and ordered the filing date for Petitioner's PCR *pro per* petition. (*Id.* at 23-24) Petitioner filed his petition, arguing the following four grounds for relief: (1) that his absence from trial was involuntary, due to his health issues; (2) his trial counsel was ineffective for not introducing Petitioner's medical records and for not calling certain witnesses; (3) that he did not receive 248 days of presentence incarceration credit applicable to his 2008 case; and (4) a bare reference to "closing arguments," lacking any supporting explanation or argument. (*Id.* at 55)

The trial court denied the petition. (*Id.* at 144-145) The court found Petitioner's claim of ineffective assistance of trial counsel was precluded from relief under Arizona Rule of Criminal Procedure 32.2 because it addressed "substantive legal arguments which he did not raise in his direct appeal." (*Id.* at 145) Additionally, the court found Petitioner's "allegations of ineffective assistance of counsel claiming his attorney performed below a reasonable standard of prevailing competency by not giving the court medical records and not calling witnesses regarding his absences from the proceedings are unsubstantiated and without merit." (*Id.*)

Petitioner appealed the trial court's decision to the Arizona Court of Appeals in February 2015. His petition for review argued: (1) his right to be present at trial was improperly denied; (2) he was owed 248 days of presentence incarceration credit; and (3) new evidence shows that his theft victim had lied in police reports. (*Id.* at 151) The record before this Court indicates that Petitioner's petition for review is pending before the Arizona Court of Appeals. (Doc. 21 at 9)

**II. LEGAL FRAMEWORK**
    **A. Exhaustion of Remedies & Procedural Default**

A state prisoner must properly exhaust all state court remedies before this Court may grant an application for a writ of habeas corpus. 28 U.S.C. § 2254(b)(1), (c); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Arizona prisoners properly exhaust state remedies by fairly presenting claims to the Arizona Court of Appeals in a procedurally appropriate manner. *O'Sullivan v. Boerckel*,

526 U.S. 838, 843-45 (1999); *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994). Arizona's "established appellate review processes" consist of a direct appeal and a PCR proceeding. *See* Ariz. R. Crim. P. 31, et. seq. and Rule 32, et. seq.; *see also Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994) ("To exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32.").

To be fairly presented, a claim must include a statement of the operative facts and the specific federal legal theory. *Baldwin v. Reese*, 541 U.S. 27, 32-33 (2004); *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996); *Duncan*, 513 U.S. at 365-66; *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) ("The mere similarity between a claim of state and federal error is insufficient to establish exhaustion."). Articulating the specific federal theory is often referred to as federalizing a claim. To federalize a claim, it is not enough to simply cite the general federal constitutional provision and/or buzzwords unaccompanied by federal constitutional analysis. *See Fields v. Waddington*, 401 F.3d 1018, 1021 (9th Cir. 2001) ("Exhaustion demands more than a citation to a general constitutional provision, detached from any articulation of the underlying federal legal theory"); *Castillo v. McFadden*, 399 F.3d 993, 1002-03 (9th Cir. 2005) (habeas petitioner did not give the state appellate court a fair opportunity to rule on a federal due process claim by concluding brief with "drive-by" citation of federal constitutional provisions, "detached from any articulation of an underlying federal legal theory"); *Hiivala*, 195 F.3d at 1106 ("[G]eneral appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion."); *Galvan v. Alaska Dep't Corr.*, 397 F.3d 1198, 1204–05 (9th Cir. 2005) ("To exhaust a federal constitutional claim in state court, a petitioner has to have, at the least, explicitly alerted the court that she was making a federal constitutional claim.") (emphasis added).

A claim can also be subject to an express or implied procedural bar. *Robinson v. Schriro*, 595 F.3d 1086, 1100 (9th Cir. 2010). An express procedural bar exists if the state court denies or dismisses a claim based on a procedural bar "that is both 'independent' of

- 8 -

the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989); *Stewart v. Smith*, 536 U.S. 856, 860 (2002) (Arizona's "Rule 32.2(a)(3) determinations are independent of federal law because they do not depend upon a federal constitutional ruling on the merits"); *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988) ("adequate" grounds exist when a state strictly or regularly follows its procedural rule). *See also Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Robinson*, 595 F.3d at 1100.

An implied procedural bar exists if a claim was not fairly presented in state court and no state remedies remain available to the petitioner. *Teague v. Lane*, 489 U.S. 288, 298-99 (1989); *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002); *Poland v. Stewart*, 169 F.3d 573, 586 (9th Cir. 1999); *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989).

This Court can review a procedurally defaulted claim if the petitioner can demonstrate either cause for the default and actual prejudice to excuse the default, or a miscarriage of justice. 28 U.S.C. § 2254(c)(2)(B); *Schlup v. Delo*, 513 U.S. 298, 321 (1995); *Coleman*, 501 U.S. at 750; *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *States v. Frady*, 456 U.S. 152, 167-68 (1982). "Cause" is something that "cannot be fairly attributable" to a petitioner, and that this "objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (citation and internal quotation marks omitted). To establish prejudice a "habeas petitioner must show 'not merely that the errors at ... trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Murray*, 477 U.S. at 494 (quoting *Frady,* 456 U.S. at 170) (emphasis in original). "Such a showing of pervasive actual prejudice can hardly be thought to constitute anything other than a showing that the prisoner was denied 'fundamental fairness' at trial". *Id.*

The miscarriage of justice exception to procedural default "is limited to those *extraordinary* cases where the petitioner asserts his [actual] innocence and establishes that the court cannot have confidence in the contrary finding of guilt." *Johnson v.*

- 9 -

*Knowles*, 541 F.3d 933, 937 (9th Cir. 2008) (emphasis in original). To pass through the actual innocence/*Schlup* gateway, a petitioner must establish his or her factual innocence of the crime and not mere legal insufficiency. *See Bousley v. U.S.*, 523 U.S. 614, 623 (1998); *Jaramillo v. Stewart*, 340 F.3d 877, 882–83 (9th Cir. 2003). A petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1935 (2013) (quoting *Schlup*, 513 U.S. at 327)). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Schlup*, 513 U.S. at 324. *See also Lee v. Lampert*, 653 F.3d 929, 945 (9th Cir. 2011); *McQuiggin*, 133 S.Ct. 1924, 1927 (2013) (explaining the significance of an "[u]nexplained delay in presenting new evidence"). Because of "the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected." *Shumway v. Payne*, 223 F.3d 982, 990 (9th Cir.2000) (citing *Calderon v. Thomas*, 523 U.S. 538, 559 (1998)).

### B. Ineffective Assistance of Counsel

Under clearly established Federal law on ineffective assistance of counsel ("IAC"), a petitioner must show that his trial counsel's performance was both (a) objectively deficient and (b) caused him prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This results in a "doubly deferential" review of counsel's performance. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (explaining that in a 28 U.S.C. § 2254 case, deference is due both to defense counsel's performance and to the state court's ruling). The Court has discretion to determine which *Strickland* prong to apply first. *LaGrand v. Stewart*, 133 F.3d 1253, 1270 (9th Cir. 1998). A habeas court reviewing a claim of ineffective assistance of counsel must determine "whether there is a reasonable argument that counsel satisfied *Strickland*'s deferential standard, such that the state court's rejection of the IAC claim was not an unreasonable application of *Strickland*. Relief is warranted only if no reasonable jurist could disagree that the state court erred." *Murray v. Schriro*, 746 F.3d 418, 465-66 (9th Cir. 2014) (internal citations and quotations

omitted).

**C. 28 U.S.C. § 2254 Habeas Petition – Legal Standard of Review**

On habeas review, this Court can only grant relief if the petitioner demonstrates prejudice because the adjudication of a claim on the merits in state court either "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This is a "'highly deferential standard for evaluating state court rulings' which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997)).

**III. Petitioner's habeas claims**

Petitioner's federal habeas petition raises the following three grounds for relief:

(Ground 1) Petitioner was denied his Sixth and Fourteenth Amendment right to self-representation at his 2010 trial. (Doc. 11 at 6-7)

(Ground 2) Petitioner was entitled to a credit of 248 days of presentence incarceration in his 2008 case, and the failure to award it amounts to cruel and unusual punishment in violation of the Sixth, Eighth and Fourteenth Amendments. (*Id.* at 8-10)

(Ground 3) Petitioner's speedy trial rights guaranteed by the Sixth Amendment were violated.

For the reasons set forth below, Petitioner's claims are denied.

**A. Ground One: Petitioner was denied his right to self-representation**

Petitioner argues the trial court violated his constitutional right to self-representation when he moved to represent himself before trial, and the trial court denied his motion without providing him a *Faretta* hearing. (Doc. 11 at 6) He asserts that he was deprived of his right to control his own trial strategy, present his own witnesses, or to confront witnesses. (*Id.*) Petitioner argued this claim on direct appeal, which the Arizona Court of Appeals denied on the merits in a reasoned opinion. (Doc. 21-2 at 158-162) This

1  Court must decide whether the Arizona Court of Appeals' decision was either contrary to,
2  or an unreasonable application of, U.S. Supreme Court law, or was an unreasonable
3  determination of the facts in light of the evidence. 28 U.S.C. § 2254(d).

4  The Arizona Court of Appeals concluded that the record supported an inference that the trial court denied Petitioner's motion for self-representation and for a continuance because "it believed [Petitioner's] request was made simply in an effort to delay the trial. The record shows [Petitioner] had requested no fewer than eight previous continuances, two of them due to his failure to appear on the previously scheduled first day of trial." (Doc. 21-2 at 160 ¶12) The court of appeals held that in denying Petitioner's motion to represent himself, the trial court had not abused its discretion. That court explained:

> The trial court made several statements on the record indicating the court found Appellant's various requests were aimed at delaying the trial. On June 13, the day after the court denied Appellant's motions to represent himself and continue the trial, the court noted it appeared the absent Appellant had been "dragging his feet on trial" and that when "[h]e was asking for new counsel at the last minute, he was grasping at straws," which is why the court had warned him on June 12 that the trial would proceed in his absence if he did not appear. Similarly, on the afternoon of June 18, when Appellant failed to appear after the court denied his request for a continuance that morning based on his medical excuse, the court noted, "[I]t's clear to this Court that he's trying to delay the trial." Given the record before us, we conclude the trial court's denial of Appellant's motion to represent himself on the first day of trial, coupled with his motion to continue, was based on the court's concern regarding the further disruption and delay of the trial that would result if the motion was granted. Under these circumstances, the trial court's denial of the motion was not an abuse of discretion. *See McLemore*, 230 Ariz. at 576-77, ¶ 17, 288 P.3d at 780-81.

(*Id.* at 162 ¶18. *See also* Doc. 21-4 at 99, 100, 135)

The U.S. Supreme Court recognizes a constitutional right to self-representation in criminal proceedings. *Faretta v. California*, 422 U.S. 806 (1975). The Supreme Court has instructed, "[a]s the *Faretta* opinion recognized, the right to self-representation is not absolute. The defendant must 'voluntarily and intelligently' elect to conduct his own defense, 422 U.S. at 835 (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464-465 (1938)), and

most courts require him to do so in a timely manner." *Martinez v. Court of App. Of Cal.,* 528 U.S. 152, 161-62 (2000) (internal quotation marks and some citations omitted). The Court further instructed that "the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." *Id.* at 162.

The Ninth Circuit requires a request for self-representation to be "timely" and not "a tactic to secure delay." *Armant v. Marquez*, 772 F.2d 552, 555 (9th Cir. 1985) The Ninth Circuit has also noted that *"Faretta* does not articulate a specific time frame pursuant to which a claim for self-representation qualifies as timely. It indicates only that a motion for self-representation made 'weeks before trial' is timely." *Stenson v. Lambert*, 504 F.3d 873, 884-885 (9th Cir. 2007) (citing *Faretta,* 422 U.S. at 835). Given the lack of a definition for "timeliness" in *Faretta*, the Ninth Circuit has reasoned that "[b]ecause the Supreme Court has not clearly established when a *Faretta* request is untimely, other courts are free to do so as long as their standards comport with the Supreme Court's holding that a request 'weeks before trial' is timely." *Marshall v. Taylor*, 395 F.3d 1058, 1061 (9th Cir. 2005). In *Stenson*, the Ninth Circuit further discussed the timeliness limits to assertion of a *Faretta* right:

> We have found that a state court's denial of a motion made on the morning trial began as untimely was neither contrary to nor an unreasonable application of clearly established federal law. *See Marshall v. Taylor,* 395 F.3d 1058, 1061 (9th Cir. 2005). The Supreme Court has never held that *Faretta*'s "weeks before trial" standard requires courts to grant requests for self-representation coming on the eve of trial. The trial court's determination that Stenson's request to proceed pro se was untimely is not objectively unreasonable under AEDPA.

*Stenson*, 504 F.3d at 884-885.

Petitioner does not argue that the Arizona Court of Appeals' holding on his self-representation claim was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Citing the U.S. Supreme Court caselaw, the Ninth Circuit has stated:

> Section 2254(d)(1) provides that a state-court decision may be "contrary" to

> Supreme Court precedent in two circumstances. First, a state-court decision is contrary to Federal law if "the state court arrives at a conclusion opposite to that reached by th[e Supreme] Court on a question of law," or "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams [v. Taylor],* 529 U.S. [362] at 405 [2000]. Thus, the "contrary to" prong requires a direct and irreconcilable conflict with Supreme Court precedent.

*Murray v. Schriro*, 745 F.3d 984, 997 (9th Cir. 2014). In light of Ninth Circuit caselaw addressing timeliness of an assertion of the right to self-representation (*e.g.*, *Stenson*, *Marshall*, and *Armant*), the Arizona Court of Appeals' decision on the trial court's ruling regarding Petitioner's motion to represent himself clearly provides no grounds for relief under 28 U.S.C. § 2254(d)(1).

The Arizona Court of Appeals' decision finding the trial court's denial of Petitioner's motion for self-representation was not an abuse of discretion was based on the trial "court's expressed concern regarding the further disruption and delay of the trial that would result if the motion was granted." (Doc. 21-2 at 162 ¶18) The court of appeals relied on the record for the inference that the trial court's denial was based in part on the trial court's belief that the Petitioner made the motion "in an effort to delay the trial." (*Id.* at 160 ¶12) The court of appeals then discussed portions of the record supporting that inference, including: that Petitioner had requested "no fewer than eight previous continuances"; Petitioner's oral motion for new counsel on May 17, 2012 and his failure to put the motion in writing as the trial court had ordered; his failure to appear on May 21 and 22, 2012 for trial; his forging a fraudulent physician's note on June 18, 2012; and the trial court's statements on the record that it clearly believed Petitioner was attempting to delay his trial. (*Id.* at 160-162)

> The U.S. Supreme Court instructs that the
>
> question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold. *See Williams v. Taylor,* 529 U.S. 362, 410 (2000). AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants

- 14 -

rebut this presumption with "clear and convincing evidence." § 2254(e)(1).

*Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007). On the record before this Court, the Arizona Court of Appeals' decision to deny Petitioner's motion for self-representation was not based on an unreasonable determination of the facts pursuant to § 2254(d)(2). Although Petitioner argues that he was not attempting to delay his trial, he has not rebutted the state court's factual findings with clear and convincing evidence.

## B. Ground Two: Denial of additional presentence incarceration credit

Under Ground Two, Petitioner argues that his due process rights, equal protection rights, and his right to be free from the imposition of cruel and unusual punishment under the Sixth, Eighth and Fourteenth Amendments of the U.S. Constitution were violated when the State did not credit him with an additional 248 days of presentence incarceration relating to his 2008 case, as it had done regarding his sentence after trial in his 2010 case. This is a state law question that is not a cognizable claim under federal habeas review. Petitioner's appellate counsel did not raise this claim on direct appeal,[2] but Petitioner did raise it in his PCR action. (Doc. 21-3 at 55)

The calculation of presentence incarceration credit is a state law matter which Petitioner cannot transform into a federal claim by citing federal law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Poland v. Stewart,* 169 F.3d 573, 584 (9th Cir. 1998); A.R.S. § 13–709(B) (stating that "[a]ll time actually spent in custody pursuant to an offense until the prisoner is sentenced to imprisonment for such offense shall be credited against the term of imprisonment otherwise provided for by this chapter."). On habeas corpus review, the Ninth Circuit has refused to consider state law errors in the application of state sentencing law. *See Lewis v. Cardwell,* 609 F.2d 926, 928 (9th Cir.1979) (quoting *Gray v. Warden of Montana State Prison,* 523 F.2d 989, 990 (9th Cir.1975) (stating that "[t]he origin of the modern concept of pre-conviction jail time

---

[2] Petitioner did raise the claim that he was owed presentence incarceration credit of 132 days on his 2008 case, and was granted relief by the Arizona Court of Appeals.

- 15 -

credit upon the term of the ultimate sentence of imprisonment is of legislative grace and not a constitutional guarantee.")); *Souch v. Schaivo,* 289 F.3d 616, 623 (9th Cir. 2002); *Christian v. Rhode,* 41 F.3d 461, 469 (9th Cir.1994); *Johnson v. Arizona,* 462 F.2d 1352, 1353–54 (9th Cir.1972) (rules of sentencing adopted by state court do not raise constitutional issues that may be reached by habeas corpus).

Even if this claim were cognizable in Petitioner's habeas action, he procedurally defaulted the claim. The trial PCR court noted that Petitioner was "precluded from relief under Rule 32.3(a)(3) on the substantive claims because he could have, but failed to, raise those claims on direct appeal." (Doc. 21-3 at 145) Petitioner has failed to establish cause and prejudice or actual innocence sufficient to overcome the procedural default of this claim. *See* Section II.A, *supra*.

### C. Ground Three: Petitioner's speedy trial rights

Petitioner argues that his speedy trial rights guaranteed by the Sixth and Fourteenth Amendments were violated when the State requested, and was granted, a short trial continuance in April 2011. (Doc. 11 at 11) Petitioner never raised this claim in state court. He failed to exhaust the claim, which was also procedurally defaulted. Petitioner argues here that he only recently received minute entries and trial transcripts that Petitioner contends show that the trial continuance granted the State was based on an improper representation about a witness's whereabouts. (Doc. 25 at 24) However, even assuming he could establish cause for not raising the issue, Petitioner has failed to show prejudice.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial." The speedy-trial right is "amorphous," "slippery," and "necessarily relative." *Barker v. Wingo,* 407 U.S. 514, 522 (1972). In *Barker,* the Court refused to quantify the right or to predicate the right on a defendant's explicit request for a speedy trial. *See Vermont v. Brillon,* 556 U.S. 81, 89–90 (2009). Rejecting such "inflexible approaches," *Barker* established a "balancing test, in which the conduct of both the prosecution and the defendant are weighed." 407 U.S. at 529-30.

Some of the factors that should be weighed when considering such claims include

the length of and reasons for delay, the defendant's assertion of his right, and the prejudice to the defendant from the delay. *Brillon,* 556 U.S. at 89–90; *Barker,* 407 U.S. at 530. To trigger a speedy trial inquiry, an accused must show that the period between indictment and trial passes a threshold point of "presumptively prejudicial" delay. *See, e.g., Barker,* 407 U.S. at 530. Prejudice normally is presumed if the delay in bringing the defendant to trial has exceeded one year. *Doggett v. United States,* 505 U.S. 647, 652 n. 1 (1992). If this threshold is not met, the Court need not proceed with the other *Barker* factors. *Id.* at 651–52. Deliberate delay "to hamper the defense" weighs heavily against the prosecution. *Barker,* 407 U.S. at 531. "[M]ore neutral reason[s] such as negligence or overcrowded courts" weigh less heavily "but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.* Because defense counsel is defendant's agent, delay caused by the defendant's counsel is charged against the defendant. *See Brillon,* 556 U.S. at 90–91. This rule applies even where counsel is assigned. *Id.* at 94.

Almost all of the delay resulting in the presumptively prejudicial delay between Petitioner's indictment and trial was attributable to Petitioner and his defense. *See* discussion in Section I.A, above. Accordingly, even if the Court assumed as true Petitioner's reason for not raising this claim in state court, Petitioner cannot succeed in establishing prejudice. Petitioner does not argue, and the facts would not support, a finding that the 40-day delay occasioned by the State's request for a continuance infected his trial with constitutional error. Moreover, applying the *Barker* balancing test, Petitioner would fail on the merits of a speedy trial violation claim, because nearly all of the trial delay was attributable to him. Further, Petitioner has not argued and otherwise fails to establish actual innocence to excuse his procedural default.

**IT IS THEREFORE RECOMMENDED** that Thomas Glenn Morgan's Petition for Writ of Habeas Corpus (Doc. 11) be **denied and dismissed with prejudice**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability be **denied** because dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna–Tapia,* 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Rule 72, Federal Rules of Civil Procedure.

Dated this 15th day of December, 2016.

_____
Honorable Deborah M. Fine
United States Magistrate Judge